## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JOHN-RANDALL GORBY, *et al.*,

    Plaintiffs,

        v.

PHILIP-MICHAEL WEINER, *et al.*,

    Defendants.

Civil Action No. TDC-13-3276

## MEMORANDUM OPINION

This is a Lanham Act trademark infringement, Lanham Act false advertising, and related common law torts action filed by John-Randall Gorby ("Gorby") on his own behalf and as a derivative action on behalf of Earth Starter, LLC ("Earth Starter") against Philip-Michael Weiner ("Weiner"), Tumml, Inc. ("Tumml"), and Chadwick van Erbe ("van Erbe"). Before the Court are Tumml's Partial Motion to Dismiss for Failure to State a Claim, ECF No. 7; Weiner's Motion to Dismiss for Failure to State a Claim, ECF No. 11; and van Erbe's Motion to Dismiss for Failure to State a Claim, ECF No. 13. For the reasons set forth below, the Court finds that Gorby can maintain this suit as a derivative action, and therefore that Weiner's and van Erbe's motions as to Count XIV (Derivative Action) are denied. As to the remaining counts, for the reasons described below, the Court denies Weiner's and van Erbe's motions as to Counts I, II, VI, IX, XI, XIII, and XV; and denies Tumml's motion as to Counts IX, XI, XIII, and XV. The Court grants Weiner's and van Erbe's motions as to Counts III, IV, V, VII, VIII, X, XII, and XVI, and grants Tumml's motion as to Counts IV, VIII, X, and XII. As a result, Counts III, IV,

V, VII, VIII, X, XII, and XVI are dismissed against all Defendants, and Counts I, II, VI, IX, XI, XIII, and XV remain against all Defendants.

## BACKGROUND AND PROCEDURAL HISTORY

For purposes of a motion to dismiss, this Court accepts as true the well-pled, non-conclusory factual allegations in a plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

In March 2011, Gorby, then a student at the University of Maryland studying Environmental Science, developed the idea for "Nourishmats:" "self-watering plastic mat[s] with color-coded properly-placed holes and seed balls that could be used in urban and suburban settings to establish a small garden." Compl. ¶ 14. In June 2011, Gorby approached Weiner, a University of Maryland undergraduate majoring in Economics, and the two struck up a business partnership relating to this idea. *Id.* at ¶ 16. They decided to form two companies: Green Earth Innovations, LLC ("Green Earth") and Earth Starter. *Id.* at ¶ 18. Green Earth would be owned solely by Gorby and would hold all of the patents and intellectual property associated with Nourishmats. *Id.* They also agreed that they would jointly own Earth Starter, and that Earth Starter would be the operating company for Nourishmats. *Id.* Gorby and Weiner contacted an attorney to formalize this arrangement. *Id.* at 19. One year later, in June 2012, Earth Starter was incorporated.[1] *Id.* at ¶ 20. Their attorney also drafted Articles of Incorporation, but neither Gorby nor Weiner signed them. Resp. to Weiner's and van Erbe's Mot. Dismiss at 9, ECF No.

---

[1] The Complaint does not indicate if or when Green Earth was incorporated.

13.   At some later point, Earth Starter trademarked "Nourishmat" and provisionally patented the mat's design.[2]   Compl. ¶ 21.

Gorby and Weiner began to build the business.   They found a factory in North Carolina and got production underway.   *Id.* at ¶ 22.   They advertised the product on the internet.   *Id.* at ¶ 23.   In April 2013, they entered and won the University of Maryland's annual Cupid's Cup, a competition for young entrepreneurs, which came with a prize of $50,000 in seed money.   *Id.* at ¶ 24.   The Nourishmat also won the Cupid's Cup Audience Choice Award, and with it an additional $2,500 in seed money.   *Id.* at ¶ 25.   Gorby and Weiner added to the Cupid's Cup money by raising $100,000 through crowdsourcing on Kickstarter.   *Id.* at ¶ 26.

At some point in this process, Weiner reached out to Tumml, "an urban impact accelerator which supports early stage companies developing innovative consumer products and services that improve urban living." *Id.* at ¶ 27.   In May 2013, Weiner sat down with Tumml representatives to discuss a relationship; Tumml indicated that it would fund and mentor Earth Starter in exchange for a five percent ownership interest.   *Id.*   Weiner and Gorby agreed.   In June 2013, Gorby and Weiner headed to San Francisco—where Tumml is headquartered—to begin working with Tumml in earnest.   *Id.* at ¶ 28.

By August 2013, the relationship between Gorby and Weiner began to sour.   Early that month, Weiner offered to buy out Gorby, but Gorby refused.   *Id.* at ¶ 28.   On August 23, 2013, Weiner broached the topic again with Gorby, during a meeting which included Clara Brenner, Tumml's Chief Executive Officer (CEO).   *Id.* at ¶ 30.   This time, Weiner offered Gorby $5,000 for the majority of his share of Earth Starter and proposed that Gorby retain an eight percent

---

[2] The Complaint states that Gorby and Weiner agreed that all intellectual property was to be held by Green Earth, but subsequently asserts that the trademark and provisional patent were registered by Earth Starter.   Based on the posture of the lawsuit—Earth Starter, not Green Earth, is a plaintiff—the Court takes the subsequent assertion as the accurate one.

ownership interest in the company. *Id.* at ¶ 31.   Brenner, who seemed to have advance knowledge of Weiner's proposal, urged Gorby to accept the offer. *Id.* at ¶ 32.   Gorby again refused. *Id.*

Gorby's second refusal of Weiner's buy-out offer triggered a concerted effort to oust Gorby from Earth Starter. "Immediately after" Gorby rejected Weiner's second buy-out offer, Weiner fired Craig Spahr, an Earth Starter employee "who[m] Weiner viewed as an ally of Gorby." *Id.* at ¶ 34. "Within a few minutes" of rejecting the offer, Gorby discovered that he was locked out of all of Earth Starter's electronic accounts. *Id.* at ¶ 35. He discovered as well that Weiner had removed all content from Earth Starter's website. *Id.* An inquiry into Earth Starter's hosting service revealed that the website had been registered only in Weiner's name, leaving Gorby powerless to get the site back up and running. *Id.* at ¶ 36. As a result, Gorby was left without "any feasible means of communicating with actual and prospective customers." *Id.* at ¶ 37. Gorby also later found that Weiner had "surreptitiously" instructed their patent attorney to include Weiner on the patent application, "even though Weiner had nothing to do with the invention of the Nourishmat." *Id.* at ¶ 38.

While Earth Starter's operations ground to a halt, Gorby learned that Weiner had started another company, UrbnEarth; that UrbnEarth was "selling garden mats and seed balls that were functionally the same as the products being sold by Earth Starter"; and that Weiner was using Earth Starter's assets and equipment to get UrbnEarth up and running. *Id.* at ¶ 39. By Gorby's calculations, Weiner used $20,000 of Earth Starter's money for UrbnEarth's operating expenses. *Id.* at ¶ 42. Weiner also lured a number of Earth Starter employees to UrbnEarth. *Id.* at ¶ 43. In particular, Weiner tapped van Erbe, who handled production and inventory for Earth Starter, for a leadership role at UrbnEarth. *Id.* at ¶¶ 44-45. Van Erbe now identifies himself as UrbnEarth's

4

"co-founder and head of production." *Id.* at ¶ 45. Upon defecting to UrbnEarth, Van Erbe held a number of pieces of Earth Starter's equipment "ransom"—equipment that was "vital to [Earth Starter's] continued operations"—and demanded that Gorby pay $5,000 for their return. *Id.* at ¶¶ 46-47, 95.   On October 30, 2013, when an Erbe finally returned the equipment, Gorby discovered that some of it had been damaged. *Id.* at ¶ 46.

In addition to using Earth Starter's assets and equipment, Weiner was "falsely advertis[ing]" Earth Starter's accomplishments as those of UrbnEarth. *Id.* at ¶ 49. For example, UrbnEarth was billed as having won the Cupid's Cup and was touted as the subject of a number of "laudatory news report[s]," reports that had actually been about Earth Starter. *Id.* On at least one occasion, the "Nourishmat" trademark was used in UrbnEarth promotional materials. *Id.* at ¶ 55.

Tumml, for its part, backed UrbnEarth and essentially severed ties with Earth Starter. *Id.* at ¶ 41. Tumml is "prominently identified" on UrbnEarth's website as an investor "supplying funding, support and services," and UrbnEarth is headquartered in Tumml's San Francisco offices. *Id.* at ¶ 40. Despite "supporting UrbnEarth in competition against Earth Starter, and having no present connection with Earth Starter," Tumml was, as of the time of Gorby's complaint, still proclaiming its affiliation with Earth Starter, "prominently" identifying Earth Starter on its website as one of the companies in Tumml's mentoring "portfolio." *Id.* at ¶¶ 41, 51.

On November 4, 2013, Gorby filed suit against Defendants in this Court on his own behalf and on behalf of Earth Starter. ECF No. 1. In his Complaint, he alleges 16 causes of action: (I) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (II) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); (III) breach of contract; (IV)

tortious interference with contract; (V) tortious interference with prospective business relations; (VI) tortious interference with contract and prospective economic advantage; (VII) breach of fiduciary duty; (VIII) tortious interference with fiduciary duties; (IX) conversion; (X) theft; (XI) misappropriation; (XII) extortion; (XIII) common law unfair competition; (XIV) derivative action; (XV) civil conspiracy; and (XVI) aiding and abetting tortious conduct.

On January 27, 2014, Tumml filed a Partial Motion to Dismiss for Failure to State a Claim asking the Court to dismiss counts IV and VIII-XVI of the Complaint. ECF No. 7. Gorby filed a Memorandum in Opposition to that Motion on February 10, 2014, and Tumml filed its Reply Memorandum on February 19, 2014. ECF Nos. 8, 12. On February 17, 2014, Weiner filed a Motion to Dismiss for Failure to State a Claim. ECF No. 11. On March 6, 2014, van Erbe filed a Motion to Dismiss for Failure to State a Claim. ECF No. 13. On May 27, 2014, Gorby submitted a consolidated Response to Weiner and van Erbe's motions.[3] ECF No. 17. Neither Weiner nor van Erbe filed a Reply Memorandum.

## DISCUSSION

### I.    Standard of Review

To overcome a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Id.* In evaluating the sufficiency of the plaintiff's claims, the Court must examine the

---

[3] On March 10, 2014, the Court (Titus, J.) stayed consideration of the pending motions in order for the parties to pursue early settlement discussions. *See* ECF No. 15. Those negotiations broke down in May 2014.

complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.    Choice of Law

In regard to the federal causes of action—the Lanham Act claims—this Court applies federal law as interpreted by the Fourth Circuit. In regard to the common law causes of action, because this Court sits in Maryland, it looks to Maryland law to determine what law governs those claims. *See Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013) ("When a claim is based on state law, the choice of law rules are those of the state in which the district court sits."). For state common law torts, Maryland applies the law of the state where the injury occurred. *See Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). Here, the alleged injuries are economic, rather than personal, and so are traditionally interpreted as accruing where the injured party resides. *See* 21 M.L.E. Torts § 2 ("The place of injury means the place where the injury was suffered rather than the place where the wrongful act took place[.]"); Restatement of the Law—Conflict of Laws § 145 ("The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business."). Accordingly, because Earth Starter is a Maryland company and Gorby is a Maryland resident, any injury they suffered was sustained in this State. This Court therefore applies Maryland law to the state common law causes of action.

## III.    The Sufficiency of Plaintiffs' Claims

Plaintiffs' complaint, which alleges 16 causes of action implicating different combinations of the three defendants, is a scatter-shot enterprise. In an effort to establish a general framework for the pleading, the Court begins with what Plaintiffs denote as Count

XIV—titled "Derivative Action"—which is not a cause of action, but rather factual averments intended to establish Gorby's ability to file a derivative suit on behalf of Earth Starter. The Court then turns to each of Plaintiffs' remaining 15 causes of action in turn.

### A.    Count XIV: Derivative Action

In Count XIV, Plaintiffs cast this suit as a derivative action brought by Gorby— "President and part-owner" of Earth Starter—on behalf of the company "to remedy injury done to [Earth Starter] by the Defendants." Compl. ¶¶ 99-100.  In their Motions to Dismiss, Weiner and van Erbe challenge Gorby's ability to maintain such a derivative action.  They interpret Counts I, II, V-VII, IX-XIII, and XV-XVI as derivative claims and argue that, as such, they must be dismissed.  Specifically, they first contend that Gorby "failed to comply with the substantive requirements to maintain a derivative action" because he did not make a "pre-suit demand" of Earth Starter's Board of Directors to bring this action directly.  Weiner Mot. Dismiss at 3, 5; *see* van Erbe Mot. Dismiss at 5.  Second, Defendants contend that Gorby "does not fairly and adequately represent the [i]nterests of Earth Starter's members in enforcing the rights of the company."  Weiner's Mot. at 3 and 7; *see* van Erbe Mot. Dismiss at 8-10.  Neither claim has merit.

Unless there is an otherwise controlling federal law, the requirements for a derivative action are governed by the state of incorporation, here, Maryland.  *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98 (1991).  Under Maryland law, a member of a corporation can file a derivative action if "members with authority to bring the action have refused to bring the action or if an effort to cause those members to bring the action is not likely to succeed."  Md. Code Ann., Corp's & Assoc. § 4A-801(b).  Maryland courts have interpreted the latter half of this provision as creating a "futility" exception to the demand requirement.  *Wasserman v. Kay*, 14

A.3d 1193, 1217-18 (Md. 2011) ("[I]t is clear that the legislature intended the phrase 'not likely to succeed' to equate with 'futility.'"); *see Parish v. Maryland & Virginia Milk Producers Ass'n*, 242 A.2d 512, 544 (Md. 1968) ("[N]o ... prior demand is required when it would be futile."). To sustain a derivative action, a plaintiff therefore must establish either that he made a demand of members of authority to file suit and failed to garner majority approval, *see* Md. Code Ann., Corp's & Assoc. § 4A-403(b)(2), or that he did not make such a demand because doing so would have been futile.

Gorby concedes that he made no pre-suit demand of Earth Starter's officers and shareholders, but excuses the failure by implicitly invoking the futility exception. Gorby notes that Weiner was CEO of the company and owned 50 percent of its shares. Compl. ¶ 102. With the "primary wrongdoer" owning half of the company, it would, Gorby maintains, have been impossible to garner the required majority approval to file suit. *Id.* Defendants counter, relying on *Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001), that the futility exception is "very limited" and argue that this case falls outside its ambit. *See* Weiner Mot. Dismiss at 6; van Erbe Mot. Dismiss at 7. But *Werboswky* actually undermines their claim. In *Werbowsky*, the Maryland Court of Appeals explained that while the futility exception should be construed narrowly, it applies where "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." 766 A.2d at 144. That reasoning applies here. Weiner, as the alleged "primary wrong-doer" in the case, is personally and directly conflicted, and so could not reasonably be expected to respond in good faith to a demand to sue. Moreover, because Weiner owns 50 percent of Earth Starter, his conflict would make it impossible for Gorby to garner the required majority approval for a derivative suit. Because the

law does not require a futile act, Gorby was not required to make a demand of Earth Starter's officers and shareholders before filing this derivative action.

A plaintiff authorized to file a derivative action may maintain that action only if he "fairly and adequately represent[s] the interests of the members in enforcing the right of the limited liability company." Md. Code Ann., Corp's & Assoc. § 4A-801(c). Weiner and van Erbe argue that Gorby's "true motivation" in filing this suit is "to pursue individual claims against Weiner for what he views as Weiner's mistreatment of him, individually." Weiner Mot. Dismiss at 8; *see* van Erbe Mot. Dismiss at 9. Weiner and van Erbe contend that because Gorby's motivations are personal, his derivative claims are essentially "afterthoughts" intended merely "to bolster" his individual claims. *Id.* They conclude therefore that Gorby does not fairly and adequately represent Earth Starter and so cannot maintain this derivative action. This argument warrants scant attention. The gravamen of Gorby's suit is that Weiner, van Erbe, and Tumml traded on Earth Starter's good name to establish and expand UrbnEarth, costing Earth Starter opportunities and revenue. *See* Compl. ¶ 50. The rights of Earth Starter are thus central to this case, and Gorby, in pressing to secure and protect those rights, serves as a fair and adequate representative of the company and its interests. Gorby can therefore maintain this suit as a derivative action on behalf of Earth Starter.

> **B.     Count I:  False Advertising under the Lanham Act**
> **Count II:  Trademark Infringement under the Lanham Act**
> **Count XIII:  Unfair Competition**

In Count I of the Complaint, Plaintiffs allege that Defendants falsely advertise UrbnEarth using the accomplishments of Earth Starter, in violation of the Lanham Act, 15 U.S.C. § 1125(a). In Count II, Plaintiffs allege that by using the "Nourishmat" trademark in advertising for UrbnEarth, Defendants have infringed that mark. In their Response to the Weiner and van Erbe

Motions to Dismiss, Plaintiffs clarify that this is a Lanham Act, 15 U.S.C. §1114(1)(a), not common law, trademark infringement action. *See* Resp. at 8-9. In Count XIII, Plaintiffs recast these claims more generally to allege the common law tort of unfair competition, asserting that Defendants' "fraud, deceit, [and] trickery" have "damaged and jeopardized" Earth Starter's business. Compl. ¶ 97. In response, Weiner attempts to hide behind the corporate veil, arguing that if there was any infringement, it was infringement by UrbnEarth, not Weiner personally. *See* Weiner Mot. Dismiss at 12. Van Erbe offers a semantic defense, asserting that because Plaintiffs' do not accuse him by name in these Counts—referring instead only to "Defendants"—the claims do not apply to him. *See* van Erbe Mot. Dismiss at 4. Tumml does not challenge these counts.

Under the Lanham Act, a person is civilly liable for false advertising if he "uses in commerce . . . any false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. §1125(a). An individual is civilly liable under the Lanham Act for trademark infringement if, without the consent of the trademark holder, he "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §1114(1)(a). Echoing the false advertising claim, the common law tort of unfair competition makes an individual liable for a deception that results in "the goods of one dealer [being] passed off as the

goods of another, and the seller receiv[ing] the profit which he would not have received except for such deception." *Edmondson Village Theatre v. Einbinder*, 116 A.2d 377, 380 (Md. 1955).

Plaintiffs' central assertion is that Defendants unfairly appropriated the success and reputation of Earth Starter as well as the trademark "Nourishmat" and parlayed them into business for UrbnEarth. That assertion is sufficient to establish these three causes of action. Plaintiffs allege, for example, that Defendants advertised that UrbnEarth, not Earth Starter, won the Cupid's Cup, and that UrbnEarth, not Earth Starter, was the "subject of [numerous] laudatory news report[s]." Compl. ¶ 49. Plaintiffs allege as well that Defendants used the trademarked name "Nourishmat" in efforts to raise money for UrbnEarth. Compl. ¶ 55. These acts of appropriation, taken as true for the purposes of these motions, amount to "false or misleading description[s] of fact" and "deception" that are not only "likely to cause confusion," but, as Gorby narrates it, *designed* to caused that confusion and thus to enable defendants to poach business from Earth Starter by passing off Earth Starter products as UrbnEarth products.

Weiner, for his part, cannot avoid exposure to liability by hiding behind the corporate veil. Lanham Act claims of False Advertising and Trademark Infringement are torts, as is the claim of Unfair Competition. *See Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 211 (4th Cir. 1998) ("The Lanham Act creates in essence a federal statutory tort, derived from the common law tort of unfair competition."). Under Maryland law, "[i]t is a generally accepted rule that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable." 6 M.L.E. Corporations § 181; *see Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 376 (D. Md. 1989) ("[A]gents and employees of a corporation may become jointly and severally liable with the corporation for torts committed by them while in the scope of service to the corporation."). Nor is van Erbe (or Tumml) immune from liability simply because his name

12

is not recited in these counts.  Plaintiffs allege the counts against the "Defendants," a collective

noun that includes all three parties.[4]  Even if van Erbe or Tumml were not included in that

collective, because Plaintiffs, as explained below, have adequately pleaded civil conspiracy, van

Erbe and Tumml face liability for these counts.

Plaintiffs thus have properly alleged a viable cause of action against Defendants under

Counts I, II, and XIII for false advertising under 15 U.S.C. § 1125(a), trademark infringement

under 15 U.S.C. § 1114(1)(a), and unfair competition.

### C.     Count III: Breach of Contract
###        Count IV: Tortious Interference with Contract

"It is well-established in Maryland that a complaint alleging a breach of contract 'must of

necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by

the defendant to the plaintiff.'" *RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 440

(Md. 2010) (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566,

569 (1977)  (emphasis in original).   Here, Plaintiffs' allegations on the existence of a contract

are sparse.  The Complaint alleges only that "Gorby and Weiner agreed to be co-owners in Earth

Starter and to devote their efforts to making Earth Starter a successful company."  Compl. ¶ 58.

Plaintiffs' Response to Weiner's and van Erbe's Motions to Dismiss confirms that this brief

assertion is "the agreement at issue."  Resp. at 9.

As pleaded, this agreement is too vague to constitute an enforceable contract.  "For a

contract to be legally enforceable, its language must not only be sufficiently definite to clearly

inform the parties to it of what they may be called upon by its terms to do, but also must be

sufficiently clear and definite in order that the courts, which may be required to enforce it, may

---

[4] Notably, under different causes of action, such as Count VI, Plaintiffs do distinguish among the
defendants.

be able to know the purpose and intention of the parties." *Robinson v. Gardiner,* 76 A.2d 354, 356 (Md. 1950). The agreement that Plaintiffs describe here fails to meet these requirements. Plaintiffs allege that there was some agreement between Gorby and Weiner, but provide no specific information about the terms of that agreement, such as: How long was the agreement to last? What particular efforts were required of each party? How did the parties define being "devote[d]" to the business?

Many of these questions have ready answers in Earth Starter's Articles of Incorporation, which Weiner attached to his Motion to Dismiss. But Plaintiffs steadfastly disavow that document, explaining that the Articles were never executed by the parties and therefore "they never became effective." Resp. at 9. Neither side mentions or provides the April 9, 2012 "Noncompetition and Confidentiality Agreements" referenced in those Articles. *See* Weiner Mot. Dismiss Ex. A, ECF No. 11-1. Instead, Plaintiffs resolutely direct this Court to consider only the allegations in the Complaint. *See* Resp. at 9. Those allegations, however, provide no indication of precisely how Gorby and Weiner agreed to be bound by their agreement, and thus provide the Court no means to discern whether and how Weiner failed to fulfill his obligations under the contract. The agreement, as pleaded, is thus effectively void. *See Robinson,* 76 A.2d at 356 ("If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties."). Plaintiffs therefore fail adequately to allege that Weiner had a contractual obligation to Gorby and thus necessarily also fail adequately to allege that he breached that obligation. In turn, in the absence of sufficient allegations of a contractual relationship, Plaintiffs' related claim that Tumml and van Erbe are liable for "intentionally induc[ing] Weiner to breach [that] contract" must also fail. Compl. ¶ 65.

14

Accordingly, Counts III and IV are dismissed.

**D.      Count V:  Tortious Interference with Prospective Business Relations**
**Count VI: Tortious Interference with Contract and Prospective Economic**
**Advantage**

In Count V, Plaintiffs accuse Weiner of tortious interference with prospective business relations based on the allegations that Earth Starter "had prospective business relations with Tumml," and that Weiner "intentionally induced Tumml not to enter into" those business relations, and instead to partner with UrbnEarth.  Compl. ¶ 70.  In Count VI, Plaintiffs claim tortious interference with contract and prospective economic advantage based on the allegations that van Erbe had an employment contract with Earth Starter, and that Weiner "induced van Erbe to terminate" that contract and instead to begin working at UrbnEarth.  Compl. ¶ 75.  In response to Count V, Weiner argues that Plaintiffs' "bare allegations" fail to establish that his actions rose to the level of improper conduct required to establish a claim for interference with prospective business relations.  Mot. Dismiss at 15.  As to Count VI, Weiner points out that only a non-party to a contract can be liable for interference with that contract, and contends that he is thus shielded from liability because, as a co-member of Earth Starter, he was a party to van Erbe's employment contract.  *See* Mot. to Dismiss at 15-16.

In Maryland, the tort of interference with contract or business relations—sometimes styled as malicious interference with business relations, or interference with economic relations, among others—has four elements:  (1) there were intentional and willful acts; (2) the acts were calculated to cause damage to a plaintiff in the plaintiff's lawful business; (3) the acts were done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of a defendant, thus constituting malice; and (4) actual damage and loss resulted from the acts of interference.  *See havePOWER LLC v. General Electric Co.*, 183 F. Supp. 2d 779, 784

(D. Md. 2002); *Natural Design, Inc. v. Rouse Co.,* 485 A.2d 663, 675 (Md. 1994) (quoting *Willner v. Silverman,* 109 Md. 341 (Md. 1909)). The tort involves a "classic three-party model": two parties who have a contract, and a third party unrelated to the contract who interferes with it. *Kaser v. Financial Protection Marketing, Inc.,* 831 A.2d 49, 55 (Md. 2003). Under Maryland law, the tort is cognizable only if the defendant tortfeasor is not a party to the economic relationship with which he has allegedly interfered. *Id.* at 59.

Maryland courts have expanded the tort, finding a cause of action when the defendant interferes with "contractual *or* business relations," an expansion that allows defendants to be found liable for interfering with business relationships not governed by enforceable contracts. *See id.* at 54-55; 21 M.L.E. Torts § 28. Such relationships include prospective business relations—those relations not yet codified in a contract—and contracts terminable at will, because "a contract terminable at will is more closely akin to the situation where no contract exists than to the situation in which an existing contract is breached." 21 M.L.E. Torts § 34.

When a business relationship is not codified in a contract, a defendant has a "broader right to interfere" with it, on the theory that such interference is, from a different perspective, simply competition in the marketplace. Mapping this idea on to the elements of the tort, if a defendant acts "with the unlawful purpose [of] causing [his competitor] damage and loss," but his aim in doing so is to gain a competitive advantage, that competitive advantage is a cognizable "right or justifiable cause" for his interference. *Natural Design, Inc.,* 485 A.2d at 676; *see Goldman v. Harford Rd. Bldg Ass'n.,* 133 A. 843, 846 (Md. 1926) ("[C]ompetition is not altruistic but is fundamentally the play of interest against interest, and so involves the interference of the successful competitor with the interest of his unsuccessful competitor."). Thus where a defendant's purpose in interfering with a non-contractual business relationship is

16

"at least in part to advance his interest in competing" with one of the parties, he is not liable in tort for that interference unless the defendant acts with "tortious intent" and by means which are themselves "wrongful." *Natural Design, Inc.,* 485 A.2d at 676 (quoting Restatement (Second) of Torts, § 768 (1977)); *Macklin v. Robert Logan Associates*, 639 A.2d 112, 119 (Md. 1994).

Tortious intent is intent "to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Macklin*, 639 A.2d at 119. In this context, wrongful conduct is "incapable of precise definition," but examples include the use of violence, intimidation, injurious falsehood or fraud, or violations of criminal law. *Id.* Thus for the conduct to be wrongful, it must be "conduct that is independently wrongful and unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Associates*, 650 A. 2d 260, 271 (Md. 1994).

In Count V, Plaintiffs make no allegation that there was an enforceable contract between Earth Starter and Tumml, instead casting their claim as one for interference with a *potential* business relationship. As to Count VI, Plaintiffs assert that Weiner interfered with an employment contract between Earth Starter and van Erbe, but offer no evidence in the Complaint or elsewhere that van Erbe was bound by an enforceable, as opposed to at-will, employment contract.[5] With no contracts on which to rely, the Court must evaluate both of these counts under the standard for interference with a business relationship.

By Plaintiffs' allegations, Weiner lured Tumml and van Erbe away from Earth Starter "in favor of UrbnEarth." Compl. ¶ 20. Thus, although there may have been intentional action calculated to cause damage to Plaintiffs, any interference by Weiner in the business relationships

---

[5] Because Plaintiffs' provide no evidence that there was an enforceable employment contract between van Erbe and Earth Starter, Weiner's argument that he cannot be liable for tortious interference with van Erbe's employment contract because, as an officer of Earth Starter, he was a party to it, misses the mark. *See* Mot. Dismiss at 16.

among Earth Starter, Tumml, and van Erbe was at least in part to advance his interest in securing UrbnEarth a competitive advantage over Earth Starter. Weiner thus would not be liable for interfering with those relationships unless the means by which he interfered in them are independently wrongful or unlawful.

As to Count V, Plaintiffs provide little specificity about the means Weiner used to interfere with Earth Starter's relationship with Tumml, alleging only that Weiner "induc[ed] [Tumml] to withdraw its support from Earth Starter in favor of UrbnEarth." Compl. ¶ 70. In the absence of an allegation of a specifically wrongful or unlawful tactic, Plaintiffs fail to make out this claim. Merely luring away a competitor's business connection—when that connection is not bound by a contract—is not actionable. Accordingly, Count V is dismissed.

As to Count VI, Plaintiffs assert that Weiner interfered with Earth Starter's business relationship with van Erbe, through intentional action calculated to cause damage to Earth Starter, by means of luring van Erbe away "by converting assets rightfully belonging to Earth Starter." Compl. ¶¶ 76-77. This allegation, too, is thin, but when read in the context of the Complaint as a whole, which alleges conversion and misappropriation as separate torts, it is sufficient to make out this cause of action. Plaintiffs assert not only that Weiner interfered in Earth Starter's business relationship with van Erbe, but also that he did so specifically by means of an act that was itself wrongful: the conversion of Earth Starter's assets. In so doing, they establish for purposes of these motions that Weiner was not fairly or "legitimately competing" for van Erbe's employment and therefore that his interference was without just cause. *Macklin*, 639 A.2d at 120. Plaintiffs have thus adequately pleaded Count VI.

In regard to vicarious liability, Plaintiffs make clear that Count VI "by [its] very nature" cannot expose van Erbe to liability. Resp. at 15 n. 5. Therefore, because, as set forth below,

Plaintiffs have adequately pleaded civil conspiracy, only Tumml also faces liability for this count as a co-conspirator.

### E.    Count VII: Breach of Fiduciary Duty

Plaintiffs assert that Weiner, as part-owner of Earth Starter, owed a fiduciary duty to the company, including the "duties of loyalty and good faith." Compl. ¶ 80. They allege that he breached that duty by "taking assets and opportunities rightfully belonging to Earth Starter" and using them for his own benefit and at Earth Starter's expense. Compl. ¶ 81. Weiner, in response, maintains that he cannot be liable for a breach of his fiduciary duty because Maryland does not recognize this as an independent cause of action. *See* Mot. Dismiss at 16-17.

The consensus in both the Maryland courts and this District is that Weiner is correct. *Willis v. Bank of America Corp.*, 2014 WL 3829520 at *25-*26 (D. Md. 2014). In *Kann v. Kann*, 690 A.2d 509 (Md. 1997), the Maryland Court of Appeals held that "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Id.* at 521. However, it went on to explain that "[t]his does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion." *Id.* The Maryland Court of Appeals later clarified that *Kann* stood for the proposition that "although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty." *International Brotherhood of Teamsters v. Willis Corroon Corp.*, 802 A.2d 1050, 1052 n.1 (Md. 2002).

Subsequent decisions have distilled this precedent to the precept that, in Maryland, a breach of a fiduciary duty may be an *element* of a tort, but it is not a tort in and of itself. *See G.M. Pusey and Assocs., Inc. v. Britt/Paulk Ins. Agency, Inc.*, Civ. No. RDB–07–3229, 2008 WL

2003747, at *6–7, (D. Md. May 6, 2008) ("Maryland does not recognize an independent cause of action for breach of fiduciary duty"); *McGovern v. Deutsche Post Global Mail, Ltd.*, Civ. No. JFM-04-0060, 2004 WL 1764088 at * 12 (D. Md. Aug. 4, 2004) ("[A] breach of fiduciary duty can give rise to a cause of action—that is, it can be a component of a cause of action—but it cannot be a cause of action standing alone."); *Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193, 1219 (Md. 2011) (noting that a breach of fiduciary duty is not "a stand alone nonduplicative cause of action"); *Vinogradova v. Suntrust Bank*, 875 A.2d 222, 231 (Md. Ct. App. 2005) (explaining that a claim for breach of fiduciary duty and a claim for negligence "condense to only one:  the claim based on the tort of negligence"). Because Maryland does not recognize the independent tort of breach of a fiduciary duty, Count VII is dismissed with prejudice.

### F.      Count VIII:  Tortious Interference with Fiduciary Duties

In Count VIII, Plaintiffs claim that Tumml and van Erbe improperly induced Weiner to breach his fiduciary duties to Earth Starter. *See* Compl. ¶¶ 82-84.  Tumml and van Erbe each counter that tortious interference with fiduciary duties is not a cognizable cause of action under Maryland law. *See* Tumml Mot. Dismiss at 9-10; van Erbe Mot. Dismiss at 13.  In their response to Tumml's motion to dismiss, Plaintiffs do not cite any authority establishing the existence of the tort, but instead restate their allegations of Tumml's wrongdoing. *See* Resp. at 7-8.  In their response to van Erbe's Motion to Dismiss, Plaintiffs seem to abandon the claim entirely, offering no response—factual or legal—to van Erbe's assertion that interference with fiduciary duties is not a cognizable tort.

A diligent search of the case law confirms Tumml's and van Erbe's contention that the tort of interference with fiduciary duties, although recognized in a few jurisdictions, *see, e.g.,*

*Nalley v. Langdale,* 734 S.E.2d 908, 921 (Ga. Ct. App. 2012), is unknown to Maryland courts.

With Plaintiffs themselves choosing not to vigorously advocate for adoption of the tort, there is

no reason to tread into the traditional domain of the state courts by adopting a new state common

law cause of action.  Accordingly, Count VIII is dismissed with prejudice.

> **G.      Count IX:  Conversion**
> **Count X:  Theft**
> **Count XI:  Misappropriation**
> **Count XII:  Extortion**

In Count IX, Plaintiffs allege that Defendants improperly took and used Earth Starter's

"equipment, inventory, and money" for their own benefit, and thus that they are liable for

conversion.  Compl. ¶ 86.  Counts X and XI repeat that allegation, but cast it as Theft and

Misappropriation, respectively.  Compl. ¶¶ 89-90, 92-93.  In Count XII, Plaintiffs accuse

Defendants of Extortion with a slight variation on the theme of the previous counts, alleging that

the defendants "withheld" Earth Starter "equipment and inventory" and demanded a payment of

$5,000 for its return.  Compl. ¶ 95.

Counts X and XII can be quickly dispatched.  Theft is a form of conversion that gives rise

to criminal, not civil, liability.  *See* Md. Code Ann., Criminal Law, §§ 7-101(m), 7-104 (theft

crimes).  The civil remedy for theft is a claim for conversion, and so Count X essentially

duplicates Count IX.  Extortion, too, is a crime, *see* Md. Code Ann., Criminal Law, §§ 3-701-706

(extortion crimes), and has no corresponding civil right of action.  *Yang v. Lee*, 163 F. Supp. 2d

554, 563 (D. Md. 2001), *aff'd* 32 Fed. Appx. 112 (4th Cir. 2002) ("Maryland . . . recognizes no

civil cause of action for extortion.").  Counts X and XII are thus dismissed with prejudice.

As to Count IX, conversion is "an intentional exercise of dominion or control over chattel

which so seriously interferes with the right of another to control it that the actor may justly be

required to pay the other the full value of the chattel."  *United States  v. Arora*, 860 F. Supp.

21

1091, 1097 (D. Md. 1994), *aff'd* 56 F.3d 62 (4th Cir. 1995) (quoting Restatement (Second) of Torts, § 222A(1)); *see also Staub v. Staub,* 376 A.2d 1129, 1131 (Md. 1977) ("The gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled."). To make out a claim for conversion, a plaintiff must therefore first adequately allege a trespass: he must allege that the defendant exercised dominion or control over chattel rightly belonging to the plaintiff. *See Arora,* 860 F. Supp at 1097 (discussing the relationship between trespass and conversion). He must then establish that the defendant's trespass led to a significant interference in the plaintiff's right of possession. This is not a showing that can be judged by hard and fast rules; it is, instead, a question of degree. Potentially relevant factors include:

a) the extent and duration of the [defendant's] exercise of dominion or control;
b) the [defendant's] intent to assert a right in fact inconsistent with the [plaintiff's] right of control;
c) the [defendant's] good faith;
d) the extent and duration of the resulting interference with the other's right of control;
e) the harm done to the chattel;
f) the inconvenience and expense caused to the [plaintiff].

*Id.* at 1097-98. In addition, because conversion is essentially an intensification or amplification of a trespass, "an action for conversion ordinarily lies only for personal property." 5A M.L.E. Conversion § 14. Money, because it is fungible, therefore "cannot be the subject of a claim for conversion unless it is a specific, segregated pool of money, thereby making it non-fungible." *In re Rood,* 426 B.R. 538, 555 (D. Md. 2010).

Here, Plaintiffs allege that van Erbe, after he was no longer an employee of Earth Starter, kept a variety of Earth Starter's inventory and equipment for over one month; that, as evidenced by the ransom demand, he did so with the express intention of preventing Gorby and Earth

Starter from possessing the equipment; and that the equipment, once returned, was damaged. This was no mere incidental trespass or misunderstanding. Taking Plaintiffs' allegations as true, it was an intentional and substantial disruption of Earth Starter's right of possession that impaired Earth Starter's ability to function as a business. Plaintiffs thus have sufficiently alleged a plausible cause of action for conversion based on van Erbe's month-long possession of Earth Starter equipment and inventory.

Plaintiffs cannot, however, establish a plausible cause of action for conversion based on their allegation that Weiner took $20,000 of Earth Starter's funds to pay UrbnEarth's expenses. As noted, money is fungible property, and so cannot be the subject of a claim of conversion unless it has been clearly earmarked and segregated. Plaintiffs allegation—that "Weiner has taken approximately $20,000 from the Earth Starter bank account"—does not invoke that exception. Compl. ¶ 42. Plaintiffs' claim for conversion based on Weiner taking and using Earth Starter funds therefore fails.

The appropriate vehicle is instead Count XI, alleging misappropriation. "It is well established that where officers and directors are misappropriating or misapplying corporate funds[,] a minority stockholder may sue in the name of the corporation to compel restitution." *Berger v. Bata Shoe Co.*, 78 A.2d 186, 188 (Md. 1951); *see also* 6 M.L.E. Corporations § 135 (explaining that grounds for a derivative action include "misappropriation or waste of corporate funds or assets"). Plaintiffs allege that Weiner took $20,000 of Earth Starter's money and used it, not merely to pay expenses unrelated to Earth Starter, but specifically to pay the expenses of Earth Starter's rival company. That allegation, taken as true for purposes of these motions, establishes a cause of action for misappropriation.

23

Plaintiffs have not, however, properly alleged a cause of action for misappropriation related to Earth Starter's inventory and equipment. Essential to misappropriation is that one put the misappropriated money or goods "to one's own use." Black's Law Dictionary (9th ed. 2009), misappropriation. Plaintiffs allegations establish that, by withholding inventory and equipment, van Erbe prevented Earth Starter from using those items, but not that he used the items himself. Plaintiffs' claim for misappropriation based on van Erbe's month-long possession of Earth Starter equipment and inventory therefore fails.

Accordingly, Count IX—conversion—is dismissed with prejudice in regard to the alleged conversion of $20,000, but remains against van Erbe to the extent it alleges conversion of equipment and inventory belonging to Earth Starter. Weiner and Tumml also face liability for this count as members of the civil conspiracy, as explained below. Count XI— misappropriation—is dismissed in regard to the alleged misappropriation of equipment and inventory, but remains against Weiner to the extent it alleges misappropriation of $20,000 of Earth Starter's funds. And because Plaintiffs have adequately pleaded civil conspiracy, van Erbe and Tumml also face liability for this count.

## H.    Count XV: Civil Conspiracy
##        Count XVI: Aiding and Abetting Tortious Conduct

In Count XV, Plaintiffs allege that Defendants engaged in a civil conspiracy because they had "an agreement or understanding to engage in unlawful and/or tortious conduct," and their conduct caused damage to Gorby and Earth Starter. Compl. ¶ 106. In Count XVI, Plaintiffs allege that Defendants aided and abetted tortious conduct because they "gave substantial assistance or encouragement to the other defendants engaging in tortious conduct." Compl. ¶ 110. Tumml insists that Plaintiffs' allegations are simply "conclusory," unsupported by "any specific conduct" demonstrating such unlawful agreements. Tumml Mot. Dismiss at 17-18.

24

Weiner does not challenge the robustness of Plaintiffs' allegations of conspiracy or aiding and abetting, but instead focuses on Plaintiffs' thin pleadings on the other counts. Noting that an individual can be liable for civil conspiracy or aiding and abetting only if there has been a separate, underlying tort, Weiner argues that Plaintiffs have "failed to state any proper cause of action against [him]" and that by failing to prove an underlying tort, have necessarily failed to state a claim for civil conspiracy or aiding and abetting. Weiner Mot. Dismiss at 19-20. Van Erbe essentially echoes Weiner's argument. *See* van Erbe Mot. Dismiss at 15.

### 1.    Civil Conspiracy

Under Maryland law, a civil conspiracy is a "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper,* 867 A.2d 276, 290 (Md. 2005) (internal quotations omitted). Proof of a civil conspiracy requires a showing of (1) an unlawful agreement; (2) the commission of an overt act in furtherance of the agreement; and (3) as a result, the plaintiff suffered injury. *See Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014); *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 485 (Md. 2006). Proof can be in the form of circumstantial evidence. *Daugherty v. Kessler*, 286 A.2d 95, 101 (Md. 1972). Thus, a civil conspiracy can be established "by inferences drawn from the nature of the acts complained of, the individual and collective interests of the alleged conspirators, the situation and relation of the parties, their motives and all the surrounding circumstances preceding and attending the culmination of the common design." *Id.*

Reading Plaintiffs' complaint as a whole, Plaintiffs have alleged sufficient facts to establish that Defendants had an agreement or understanding to accomplish an unlawful act, or to

use unlawful means to accomplish an act, that damaged the Plaintiffs  Those facts, taken as true for purposes of these motions, would be sufficient to infer an agreement among Weiner, Tumml, and van Erbe to oust Gorby and supplant Earth Starter by unlawful means, including engaging in unfair competition, false advertising, trademark infringement, conversion, and misappropriation. *See supra* part III. B. and G. Among the facts supporting the existence of such an agreement include that (1) Tumml knew and approved of Weiner's efforts to buy out Gorby; (2) when Gorby refused, Weiner removed all content from Earth Starter's website, cut off Gorby's ability to access Earth Starter's computer system, and started UrbnEarth; (3) in the same time frame, Weiner recruited van Erbe to leave Earth Starter and be a co-founder of UrbnEarth; (4) once UrbnEarth was founded, Tumml cut off its discussions to provide financial support to Earth Starter and instead provided financial support to UrbnEarth as a "key investor"; and (5) Tumml allowed UrbnEarth to establish its headquarters in Tumml's offices. These facts suggest a close working relationship among Weiner, van Erbe, and Tumml and support an inference that UrbnEarth's rise to supplant Earth Starter was not mere happenstance, but the result of agreement among the three to achieve this result through a deliberate strategy.

The allegations further permit the inference that the agreement between the Defendants was not merely to supplant Earth Starter, but to do so through unlawful means. These allegations include that (1) Van Erbe unlawfully converted essential Earth Starter equipment and inventory; (2) Weiner unlawfully misappropriated Earth Starter funds for UrbnEarth use; (3) Defendants falsely and deliberately traded on the similarities between UrbnEarth and Earth Starter to poach Earth Starter's business, by falsely advertising on the UrbnEarth website that UrbnEarth had received funding and accolades actually won by Earth Starter; (4) Tumml continued to falsely advertise on its website an affiliation with Earth Starter long after it had aligned itself with

UrbnEarth; and (5) UrbnEarth unlawfully used the Earth Starter's trademark "Nourishmat" as part of a fundraising effort.  Each of these acts could qualify as an "overt act" in furtherance of the conspiracy.  Lastly, Plaintiffs have sufficiently alleged that these actions resulted in damages to Earth Starter and Gorby.

Plaintiffs have thus pleaded facts sufficient to establish that Defendants formed a civil conspiracy to use unlawful means to supplant Earth Starter with UrbnEarth.  As Defendants correctly point out, civil conspiracy is not "a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Lloyd v. Gen. Motors Corp.,* 916 A.2d 257, 284 (2007) (internal quotations omitted).  Instead, it is a means "to extend liability for a tort beyond the actual tortfeasor" to any others who might have encouraged, facilitated, planned or assisted in the tort.  15A C.J.S. Conspiracy § 8.  Thus where a civil conspiracy exists, "the acts of one civil co-conspirator are attributed to other co-conspirators for purposes of determining the civil liability of the participants in the conspiracy." *Mackey*, 892 A.2d at 485.  Thus, for purposes of these motions, Weiner, Tumml, and van Erbe are each potentially jointly and severally liable for every Count found to have been sufficiently pled— Counts I, II, VI, IX, XI, and XIII—with the exception, noted earlier, that van Erbe cannot be vicariously liable for interfering with his own employment contract under Count VI.  *See* Resp. at 15 n. 5.

### 2. Aiding and Abetting

While the crucial characteristic of a conspiracy is an *agreement* between the parties to participate in wrongful conduct, aiding and abetting tortious conduct is defined by specific *actions*:  a defendant is liable for aiding and abetting tortious conduct if he "by any means (words, signs, or motions) encouraged, incited, aided, or abetted the direct perpetrator of the

27

tort." *Alleco Inc. v. Weinberg Foundation, Inc.*, 665 A.2d 1038, 1049 (Md. 1995) (quoting *Duke v. Feldman,* 226 A.2d 345, 347 (Md. 1967)).   Traditionally, "aiding or abetting" consists of knowingly giving "substantial assistance" to someone committing a tort.   Restatement (Second) of Torts § 876.   Thus, as with conspiracy, to establish liability for aiding and abetting, there must be an underlying tort and a direct perpetrator of the tort whom the defendant aids and abets. *Alleco Inc.*, 665 A.2d at 1050.   If a defendant provides assistance to the commission of the tort, he is liable with the principal tortfeasor for the resulting tort.  *See id.* at 1049 ("All who actively participate in any manner in the commission of a tort, or who . . . aid or abet its commission, are jointly and severally liable therefor") (quoting 1 Cooley, *Law of Torts* 244 (3d ed. 1906)).

Although what constitutes aiding and abetting is a fact-specific question, it is limited to instances in which a defendant can be shown to have helped the principal tortfeasor bring about a particular tort.  *See Alleco, Inc.*, 665 A.2d at 1050 ("aider and abettor liability 'is based on the civil liability imposed at common law of those who aid others in unlawful acts, and is distinct from that which imposes liability on the basis that the parties participated in a joint venture'") (quoting 1 Speiser, et al., *The American Law of Torts* § 3:4, at 384-386 (1983)).  *See also Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967) (explaining that "[s]ilent approbation or pleasure in [another's commission of a tort] does not make a person" liable as an aider and abettor).   Thus, Plaintiffs' allegations of civil conspiracy, which, for purposes of these motions, establish that Defendants agreed to participate in the common enterprise of promoting UrbnEarth at Earth Starter's expense through unlawful means, do not necessarily also establish aider and abettor liability.   Instead, to state a claim for aider and abettor liability, Plaintiffs' allegations must establish that, for any particular count, the non-primary tortfeasors assisted in bringing about the specific tort at issue.

These constraints restrict the applicability of aider and abettor liability here.  Because aider and abettor liability is possible only for those counts that adequately plead an underlying tort, only Counts I, II, VI, IX, XI, XIII need be considered.[6]  Within that limited group, aider and abettor liability is relevant only if the defendant is not already accused of principal liability for the tort.  However, Plaintiffs' imprecise pleading makes determining whether a defendant is being accused as a direct perpetrator difficult.  Counts I, II, IX, XI, and XIII are all alleged against "Defendants," and so, strictly speaking, cast each defendant as a principal.  Practically, however, the specific allegations in some counts make clear that a particular defendant is the supposed principal wrongdoer.  The Court will endeavor to chart a course through this uneven terrain by taking each count in turn.

In Counts I, II, and XIII—the Lanham Act and unfair competition counts—Plaintiffs name each Defendant as a principal perpetrator of the tort and their specific allegations draw no salient distinctions between them.  For example, Plaintiffs allege that "Defendants falsely advertise that their new business entity, UrbnEarth, (1) won the Cupid's Cup Award actually won by Earth Starter."  Compl. ¶ 49.  No defendant is picked out as the particular architect of this scheme; no defendant is identified as the person who created the advertisement.  Because the Plaintiffs' allegations on these counts are directed equally to all Defendants, there is no means by which to mark one defendant as a principal and another as an aider and abettor.  The most sensible reading of the allegations, then, is that they are directed at all Defendants as principal tortfeasors.  To the extent that Plaintiffs intended to assert aiding and abetting liability against certain defendants with respect to these counts, the absence of additional allegations of the

---

[6] Although Plaintiffs adequately plead a claim of civil conspiracy, civil conspiracy cannot stand as an independent tort, and therefore cannot serve as the underlying tort that a defendant could aid and abet.

specific assistance provided by specific defendants precludes a finding that they have successfully asserted such a claim. .

As to Count VI (Interference with Prospective Business Relations), Plaintiffs do allege a principal wrongdoer—Weiner—but make no allegation, in that count or elsewhere, that anyone other than Weiner took part specifically in inducing van Erbe to terminate his employment contract.  With no allegations of encouragement or assistance on the part of Tumml to aid Weiner in inducing van Erbe to terminate his contract, Plaintiffs fail to allege sufficiently that Tumml aided or abetted Weiner in commission of this tort.

Turning to Count IX (Conversion), Plaintiffs do not expressly allege a principal wrongdoer.  Instead, they assert that "Defendants, acting individually and as a group" converted Earth Starter's equipment and inventory. Compl. ¶ 87.  The substance of Plaintiffs' allegations, however, compel the conclusion that van Erbe—who held Earth Starter's equipment and inventory ransom—is the principal alleged wrongdoer.  The allegations do not, however, provide grounds for aiding and abetting liability.  Plaintiffs' bare assertion that Defendants effected this conversion both "individually and as a group" provides no basis on which to infer that Weiner and Tumml even knew of van Erbe's intentions, much less that they provided assistance to van Erbe in carrying out those intentions.

As to Count XI (Misappropriation), Plaintiffs again do not expressly allege a principal wrongdoer, but instead assert that "Defendants, acting individually and as a group," misappropriated $20,000 of Earth Starter's funds.  Compl. ¶ 93.  Here, the substance of Plaintiffs' allegations elsewhere in the Complaint make clear that Weiner is the principal alleged wrongdoer. *See* Compl. ¶ 42.  But, as with Count IX, these allegations provide no grounds for aiding and abetting liability.  Plaintiffs provide no details that would permit the inference that

van Erbe or Tumml knew specifically of Weiner's plans to take money from Earth Starter's accounts or that they assisted him in that withdrawal.

Accordingly, Count XVI is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted in part and denied in part. Counts III, IV, V, and XVI are dismissed against all Defendants. Plaintiffs are granted 14 days' leave to amend as to those counts. Counts VII, VIII, X, and XII are dismissed with prejudice against all Defendants. The Motion to Dismiss is denied as to the remaining counts. A separate order will follow.

Date:  September 23, 2014

THEODORE D. CHUANG
United States District Judge